# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs November 6, 2012

## JUAN ALBERTO BLANCO GARCIA v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Warren County**
**No. F-12960      Larry B. Stanley, Jr., Judge**

---

**No. M2012-01058-CCA-R3-PC - Filed December 7, 2012**

---

The petitioner, Juan Alberto Blanco Garcia, appeals the denial of his petition for post-conviction relief, arguing that he received the ineffective assistance of trial counsel and that his guilty pleas were unknowing and involuntary. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Matt Maniatis, Nashville, Tennessee, for the appellant, Juan Alberto Blanco Garcia.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Lisa Zavogiannis, District Attorney General; and Thomas J. Miner, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On August 24, 2011, the petitioner, a Hispanic national and illegal alien at the time, entered best interest guilty pleas to child neglect of a child under the age of six years, a Class E felony, and child abuse of a child over six years of age, a Class A misdemeanor, in exchange for consecutive terms of six years as a Range III, persistent offender for the child neglect conviction and eleven months, twenty-nine days at 75% for the child abuse conviction. The six-year sentence was suspended to probation with the condition that the petitioner have no contact with the victim or the victim's adoptive family.

At the guilty plea hearing, the State recited the facts it would have presented had the case gone to trial:

> The facts in this case are that on April 8, 2008, a 7 year old girl was found at one of the elementary schools with a note indicating that she wanted to kill herself. She was taken to the school counselor and she began telling the counselor that she had been subjected to physical abuse at the home in which she resided. She was then brought to the Child Advocacy Center where she was interviewed. She stated that [the petitioner] had on occasion whipped her with a television cable cord at her residence . . . in Warren County. She lived there with her maternal grandmother and [the petitioner] was her maternal grandmother's boyfriend at that time. She had strike marks on her back and buttocks at the time she was interviewed on October 8 that were consistent with being whipped with the cord. She took the law enforcement officers to this home . . . and pointed out the cord which was hanging on a cabinet in the house. She also indicated that her brother who was 3 years old and she were residing there in a closet about 5' x 3' and that was where they slept. They didn't have a bed or a room in the home and that he had been similarly disciplined.

> On that day efforts were made to locate [the petitioner] and discuss the matter with him. He left his residence . . . on that day and was not apprehended until two and a half years later.

On February 16, 2012, the petitioner filed a petition for post-conviction relief in which he raised claims of ineffective assistance of counsel and involuntary and unknowing guilty pleas. Specifically, he alleged that his trial counsel failed to fully inform him of the immigration consequences of a plea and that counsel pressured him to plead guilty. According to his post-conviction petition, the Department of Homeland Security initiated removal proceedings as a result of the petitioner's convictions and he was being detained in Texas awaiting a hearing in federal court.

At the April 25, 2012 evidentiary hearing, Christa Lynn Blanco, the petitioner's wife, testified that she and the petitioner were not married at the time he entered his guilty pleas and that he was not a United States citizen. She talked to trial counsel on several occasions, and counsel told her that she did not know "what immigration would do other than after the trial there was a 72 hour period that ICE [Immigration and Customs Enforcement] . . . would have to be able to pick [the petitioner] up but that [counsel] couldn't state whether they . . . would or would not." Trial counsel told her that the petitioner "may or may not be deported." Mrs. Blanco said had she and the petitioner known that "he would have been inadmissible

into the United States, that plea would have never been accepted. [They] would have taken it to trial." She said that the petitioner was currently detained in the Brooks County Detention Center in Texas, explaining that she and the petitioner had gone to Mexico, gotten married, and were "looking for places along the border to stay" when the petitioner "was forced back across by mafia and went past . . . the first checkpoint and then he diverted himself to the second checkpoint and told them that he just wanted to go back to Mexico . . . and so he is being detained as an illegal re-entry."

Mrs. Blanco said that after she and the petitioner married, she asked trial counsel if she had discussed immigration with the petitioner, but counsel "didn't give the specifics of what was discussed other than they discussed it." She consulted other attorneys about the petitioner's immigration status, but they were unable to give her any advice because she did not retain them. She told the petitioner she had learned that a "crime of moral turpitude . . . would make him inadmissible and he needed to talk to [trial counsel] about it."

Trial counsel testified that she had "hours" of conversation with the petitioner regarding his case and the possible outcomes at trial. She said she never met with the petitioner and Mrs. Blanco together. When the State offered a "time served offer," she advised the petitioner to take the offer because he had been charged with a serious sexual offense[1] for which he could be convicted, resulting in a lengthier sentence and classification as a sex offender. Counsel recalled specifically telling the petitioner he would be deported because that was "what happens . . . in any type of situation where an illegal Hispanic is in jail. I mean for very minor offenses immigration always comes to get them after they enter their plea." At the time he entered the pleas, the petitioner was already subject to a hold for ICE and knew that he faced immediate deportation. Counsel discussed with the petitioner that he might not be able to re-enter the United States as a result of his guilty pleas, and the petitioner "made it very clear to [counsel] that re-entry into the country legally was very, very expensive, . . . and he expressed to [counsel] that he didn't know if he would be able to afford to do it legally but he did ask how it would affect him if he were to do that."

At the conclusion of the hearing, the post-conviction court issued oral findings of fact and conclusions of law, followed by the entry of a written order, in which it denied the petition on the grounds that the petitioner had failed to carry his burden of proof for either claim.

---

[1]The indictment is not included in the record on appeal, but, according to the petitioner's petition for post-conviction relief, he was indicted for aggravated sexual battery, three counts of child abuse, and two counts of child neglect.

# ANALYSIS

The petitioner argues that trial counsel provided ineffective assistance by failing to adequately advise him about the immigration consequences of his guilty pleas. The petitioner additionally argues that his guilty pleas were entered involuntarily and unknowingly due to trial counsel's erroneous advice and coercion. The State responds that the record supports the post-conviction court's findings that the petitioner failed to meet his burden of demonstrating ineffective assistance of counsel or unknowing and involuntary guilty pleas. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Citing Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473 (2010), the petitioner first argues that trial counsel was deficient in her performance by her failure to provide accurate advice regarding the immigration consequences of his guilty pleas. In denying relief on the basis of this claim, the post-conviction court determined that counsel's performance was not deficient:

> The Court finds from the proof presented that the [petitioner] was aware that Immigrations and Customs Enforcement had placed a Detainer on [p]etitioner while he was confined in the Warren County Jail and that if he entered his plea in this cause he was subject to immediate deportation. The Court further finds that the [petitioner] was aware that his plea could affect his ability to re-enter the [c]ountry, questioned counsel about what effect this plea would have on his ability to re-enter the [c]ountry and was advised by counsel that counsel could not advise him on this matter and that he should seek legal assistance from another source. The proof also indicates that [p]etitioner's wife consulted with at least two (2) private attorneys regarding this matter and was unable to obtain an answer to the question. The Court finds that the question presented by [p]etitioner about his re-entry into the [c]ountry was one where the deportation consequences of his actions were unclear or uncertain and in accordance with Padilla v. Kentucky, [130 S. Ct. at 1483,] the duty of defense counsel was to advise [p]etitioner "that pending criminal charges may carry a risk of adverse immigration consequences" and that in doing so she met her obligation of competency under Strickland.

The record fully supports these findings. According to trial counsel's testimony, she advised the petitioner that he would be deported as a consequence of his guilty pleas and

discussed with him that he might not be able to re-enter the United States. She said the petitioner "made it very clear to [counsel] that re-entry into the country legally was very, very expensive, . . . and he expressed to [counsel] that he didn't know if he would be able to afford to do it legally but he did ask how it would affect him if he were to do that." We conclude, therefore, that the post-conviction court did not err in finding that the petitioner received effective assistance of counsel.

The petitioner also argues that counsel's alleged deficiencies in representation rendered his guilty pleas involuntary and unknowing. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the guilty plea hearing reveals that the trial court informed the petitioner of his constitutional rights and of the specific rights he was waiving by pleading guilty. The petitioner assured the trial court that his counsel had discussed the plea agreement with him, that he fully understood the constitutional rights he was waiving by entering his pleas, and that he was freely and voluntarily entering the pleas because he believed it was in his best interest to do so. At the beginning of the plea colloquy, the petitioner, testifying through an interpreter, answered "[v]ery clearly" when asked if he understood the terms of the plea agreement. Asked if he understood the charges against him

and the proof required to convict him of the charges, the petitioner responded, "Perfectly I do." We conclude, therefore, that the post-conviction court did not err in finding that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

We observe that Tennessee Rule of Criminal Procedure 11(b)(1)(J), effective July 1, 2011, provides, "[I]f the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea." The petitioner pled guilty on August 24, 2011, less than two months after the effective date of the rule, and it does not appear that the trial court discussed immigration considerations with the petitioner at the guilty plea hearing. However, trial counsel testified at the post-conviction evidentiary hearing that she specifically remembered telling the petitioner that he would be deported. She said that her research in the area of immigration law did not reveal a clear answer as to whether a conviction for child abuse would prevent the petitioner from coming back into the country legally, as "it depend[ed] on which district ha[d] [the petitioner] because each district applies the definitions differently." Therefore, she told the petitioner that his plea could have an effect on his ability to re-enter the country, but she was not certain of that effect. She recalled that she advised Mrs. Blanco, the petitioner's current wife, that she needed to consult an immigration attorney because counsel could not tell her "what will happen to him in the future with this on his record."

There appear to be no cases discussing the effect of the trial court's not inquiring of a defendant as to his or her knowledge of the immigration consequences of a plea, and here we have the unrebutted testimony from counsel, accredited by the post-conviction court, that she informed the petitioner about deportation and that any other immigration consequences were dependent on "which district ha[d] him." Thus, we cannot conclude that any failure by the trial court at the guilty plea hearing to discuss the immigration consequences of the petitioner's pleas rendered the petitioner's pleas unknowing or involuntary.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in her representation or that his guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE